## Case No. 25-50367

# In the United States Court of Appeals for the Fifth Circuit

PAUL PARROTT, AS THE REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS, AND ON BEHALF OF THE INTERNATIONAL BANCSHARES CORPORATION EMPLOYEES' PROFIT SHARING PLAN AND TRUST,

*Plaintiff – Appellee*

**v.**

INTERNATIONAL BANCSHARES CORPORATION, INTERNATIONAL BANCSHARES CORPORATION PROFIT SHARING PLAN COMMITTEE, and International Bank of Commerce,

*Defendants – Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, NO. 5:24-CV-01263-DAE

## BRIEF OF APPELLANTS

DYKEMA GOSSETT PLLC

**Donna McElroy**
**Brooke M. Bohlen**
112 East Pecan Street, Suite 1800
San Antonio, Texas  78205
(210) 554-5500 – Telephone
(210) 226-8395 – Telecopier

**Christopher D. Kratovil**
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401

*Attorneys for Appellants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

A.    <u>Parties</u>

**Appellants:**                    **International Bancshares Corporation;**
**International Bank of Commerce; and**
**The International Bancshares Corporation Profit Sharing Committee**

**Appellee:**                    **Paul Parrott, as Representative of a Class of Similarly Situated Personas, and on Behalf of the International Bancshares Corporation Employees' Profit Sharing Plan and Trust**

B.    <u>Counsel</u>

**Attorneys for Appellants**:    **Donna McElroy**
**Brooke M. Bohlen**
DYKEMA GOSSETT PLLC
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205

**Christopher D. Kratovil**

ii

DYKEMA GOSSETT PLLC
1717 Main Street, Suite 4200
Dallas, Texas 75201

**Attorneys for Appellee:**          **Jennifer K. Lee**
**Carl F. Engstrom**
ENGSTROM LEE LLC
323 N. Washington Ave., Suite 200
Minneapolis, Minnesota, 55401

**Marc A. Zito**
JONES GRANGER
10000 Memorial Drive, Suite 888
Post Office Box 4340
Houston, Texas 77210

*/s/ Christopher D. Kratovil*
**Christopher D. Kratovil**
Counsel for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument because this case presents a novel legal issue arising from the denial of a motion to compel arbitration, with other courts reaching differing conclusions on this issue. Because of the novelty, importance, and complexity of this issue, Appellants believe that oral argument will benefit the Court in reaching a decision.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS ........................................ii

STATEMENT REGARDING ORAL ARGUMENT ...............................iv

TABLE OF CONTENTS .......................................................... v

TABLE OF AUTHORITIES.....................................................vii

JURISDICTIONAL STATEMENT .....................................................xi

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW .............xii

STATEMENT OF THE CASE ................................................. 1

SUMMARY OF THE ARGUMENT ........................................ 4

STANDARD OF REVIEW...................................................... 6

ARGUMENT ........................................................................ 6

   I.  The arbitration provision is valid and enforceable against Parrott. ..................................................................... 7

      A.  Federal and state law strongly favor the enforcement arbitration agreements............................................. 7

      B.  The arbitration provision is valid and applies to Parrott's claim on behalf of the Plan because the Plan consented to arbitration.............................................................. 9

      C.  Plaintiff's claims are within the scope of the arbitration agreement. ............................................................ 15

      D.  Either abatement or dismissal is warranted. ......................... 17

   II.  The requirement for individual arbitration is not invalid under the "effective vindication" doctrine. ................................... 17

A.  Plaintiff has produced no binding authority for application of the effective vindication doctrine in this Circuit, and the doctrine is inconsistent with the goals of the Federal Arbitration Act.....................................................18

B.  Even applying non-binding authority from other Circuits, the Plan's Arbitration Provision allows for effective vindication of Parrott's claims, just not class action. .............22

C.  To the extent the Arbitration Provision bars statutory relief permitted by ERISA, the Plan's severability clause severs the provisions that go too far. ......................................25

III. The Arbitration Provision is not an unlawful exculpatory provision. .........................................................................................27

CONCLUSION .........................................................................................29

CERTIFICATE OF SERVICE................................................................31

CERTIFICATE OF COMPLIANCE.......................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ................................................................. 8

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ............................................................ 8, 20

*Avecilla v. Live Nation Entm't, Inc.*,
    2023 U.S. Dist. LEXIS 139169 (C.D. Cal. 2023) ................. 21

*Berkelhammer v. ADP Totalsource Grp., Inc.*,
    74 F.4th 115 (3d Cir. 2023) ............................................ 10, 11

*Cantella & Co. Inc. v. Goodwin*,
    924 S.W.2d 943 (Tex. 1996) (orig. proceeding) ............ 16, 17

*Carter v. Country Wide Credit Indus.*,
    362 F.3d 294 (5th Cir. 2004) ................................................. 8

*Cedeno v. Sasson*,
    100 F.4th 386 (2d Cir. 2024) (Menashi, J., dissenting) ...... 21

*Coleman v. Brozen*,
    Civil Action No. 3:20-CV-01358-E, 2023 U.S. Dist. LEXIS 119528
    (N.D. Tex. 2023) ................................................... 24, 25, 26

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995) ............................................................... 10

*Dennison v. MONY Life Ret. Income Sec. Plan for Emps.*,
    710 F.3d 741 (7th Cir. 2013) ............................................... 10

*Duke v. Luxottica*,
    2023 U.S. Dist. LEXIS 176479 (E.D.N.Y. 2023) ................. 21

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989) ........................................................... 28

*Harris v. Paredes*,
  No. 3:23-cv-50231, 2024 U.S. Dist. LEXIS 32199
  (N.D. Ill. 2024) ......................................................... 12, 13

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*,
  59 F.4th 1090 (10th Cir. 2023) ........................................ 19

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
  134 S.Ct. 604 (2013) ........................................................ 25

*Hendricks v. UBS Fin. Servs.*,
  546 F. App'x 514 (5th Cir. 2013) ........................................ 8

*Holmes v. Baptist Health S. Fla., Inc.*,
  Civil Action No. 21-22986-Civ-Scola,
  2022 U.S. Dist. LEXIS 10834 (S.D. Fla. 2022) ............... 13, 14, 21

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ........................................................ 10

*Jones v. Halliburton Co.*,
  583 F.3d 228 (5th Cir. 2009) ........................................ 16, 17

*Kramer v. Smith Barney*,
  80 F.3d 1080 (5th Cir. 1996) ........................................... 19

*LaRue v. DeWolff, Boberg & Assocs.*,
  552 U.S. 248 (2008) ........................................................ 23

*Mathews v. Sears Pension Plan*,
  144 F.3d 461 (7th Cir. 1998) ........................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ...................................................... 16, 17

*Perez v. Bruister,*
   823 F.3d 250 (5th Cir. 2016)................................................ 23

*Robertson v. Argent Trust Co.,*
   2022 U.S. Dist. LEXIS 133578 (D. Ariz. 2022) .................... 21

*Smith v. Bd. of Dirs. of Triad Mfg.,*
   13 F.4th 613 (7th Cir. 2021) ........................................... 6, 19

*Smith v. Spizzirri,*
   601 U.S. 472 (2024)........................................................... 17

*Tittle v. Enron Corp.,*
   463 F.3d 410 (5th Cir. 2006)................................................ 6

*Varity Corp. v. Howe,*
   516 U.S. 489 (1996)........................................................... 25

## Statutes

9 U.S.C. § 2 ........................................................................ 19

9 U.S.C. § 16(a)(1)(B).......................................................... xi

29 U.S.C. § 1102(b)(3)......................................................... 10

29 U.S.C. § 1109(a) ............................................................... 6

29 U.S.C. § 1132(a)(2).......................................... 4, 6, 9, 27

29 U.S.C. § 1144(d)............................................................. 22

ERISA ..................................................................... *passim*

FAA ........................................................................ *passim*

FAA, 9 U.S.C. § 1, *et seq.*..................................................... 8

## Other Authorities

5th Cir. R. 32.1.................................................................. 33

5ᵗʰ Circuit Rule 28.2.1...........................................................................ii

FED. R. APP. P. 32(a)(5).................................................................... 33

FED. R. APP. P. 32(a)(6).................................................................... 33

FED. R. APP. P. 32(a)(7)(B)............................................................. 33

FED. R. APP. P. 32(f) ....................................................................... 33

x

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal from a denial of a motion to compel arbitration under 9 U.S.C. § 16(a)(1)(B).

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

1.  Whether the district court erred in denying Appellants' motion to compel arbitration when the ERISA Plan on whose behalf this litigation was initiated agreed to arbitration.

# STATEMENT OF THE CASE

Plaintiff-Appellee Paul Parrott ("Parrott") was employed by Defendant-Appellant International Bancshares Corporation ("IBC"). ROA.10. As an employee of IBC, Parrott was enrolled in the IBC Employees' Profit Sharing Plan (the "Plan"), which is a tax-qualified retirement plan for the benefit of IBC's eligible employees. ROA.105. The Plan, as amended, expressly subjects any disputes regarding the Plan or its benefits to arbitration. More specifically, the Plan contains the following arbitration provision in Section 11.09 (the "Arbitration Provision"):

Section 11.09     ARBITRATION REQUIREMENT AND PROCEDURE

(a) *General.* Subject to and without waiver of full compliance with the Plan's benefit claims procedures and the corresponding provisions of the summary plan description for this Plan, which must be exhausted with respect to any claim before any arbitration pursuant to this Section 11.09, all Covered Claims (as defined in Section 11.09(b)) must be resolved exclusively pursuant to the provisions of this Section. The judgment on the final award the arbitrator(s) renders may be entered in any court having jurisdiction thereof and shall be res judicata as to all Covered Claims the Arbitration Claimant (as defined in Section 11.09(b)) asserted or could have asserted in the arbitration demand. For the purposes of this Section, the term "IBC" means the Plan Sponsor, International Bancshares Corporation.

ROA.157. This Arbitration Provision is clear, broad, and exclusive.

1

Moreover, the Arbitration Provision reiterates that any participant in the Plan has agreed to waive a judge and jury, and has waived any right to sue IBC outside of arbitration:

> (i)   Waiver of Judge and Jury. Each Arbitration Claimant, whether pursuing a claim for benefits or other relief on behalf of the Plan as a whole, by participating in this Plan, is specifically waiving the right it otherwise would have had to sue IBC, Trustee, the Plan Administrator or any party to whom administration or investment discretion is delegated hereunder in court and to have such claims decided by a judge or jury. This jury trial waiver is a separate and distinct agreement between all Arbitration Claimants and IBC. If for any reason the agreement to arbitrate under this Section is deemed unenforceable, the agreement to pursue claims in a non-jury trial shall remain in full force and effect.

ROA.168.  As the foregoing paragraph makes clear, in the event the Arbitration Provision fails in any way, the Plan participant has separately waived the right to a jury trial and has agreed to submit to a non-jury trial.

In addition to requiring arbitration, the Plan also expressly prohibits class and collective actions:

2

No Group, Class, or Representative Arbitrations. All Covered Claims must be brought solely in the Arbitration Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Arbitration Claimant's Covered Claims. It is the intent of this Section that disputes be resolved on an individualized basis between an individual Arbitration Claimant and IBC. It is agreed that no dispute shall be certified as a class or collective action, or on a basis involving claims brought in any purported representative capacity on behalf of current or former employees, applicants or other persons similarly situated and no arbitration proceeding under this Section shall be consolidated with, or joined in any way with, any other arbitration proceeding. Arbitration Claimant and IBC hereby waive any right to participate in a class or collective action or any representative proceeding (the "Class Action Waiver"). Arbitration Claimant and IBC shall be required to pursue any claims on an individual basis under this Section.

ROA.167.  In other words, Plan participants are limited to asserting their own claims in individual arbitrations, with the Plan participant's right to participate in a class or collective action waived.

Despite the Plan's Arbitration Provision, its waiver of the right to institute a lawsuit, its waiver of the right to a jury trial, and its prohibition of class action and collective action lawsuits, Plaintiff Parrott nonetheless filed a putative class action lawsuit on August 14, 2024 against Appellants.   ROA.8.   Plaintiff's Complaint does not make reference to his arbitration obligation and does not acknowledge the Plan's Arbitration Provision or its various waivers of trial rights.

Invoking the Arbitration Provision of the Plan, Appellants moved to compel arbitration.  ROA.71. The district court denied the motion to

compel on the basis that Parrott, who was no longer employed by IBC, was no longer a "participant" in the Plan at the time the Plan was amended to adopt the Arbitration Provision.[1]  ROA.276.  This appeal followed.

## SUMMARY OF THE ARGUMENT

Plaintiff-Appellee Paul Parrott seeks to vindicate alleged injuries suffered by the Plan.  As a putative representative of the Plan and all of its members, he is bound by the Plan's agreement to arbitration.  It does not matter that Parrott individually is no longer a participant in the Plan, or that he divested from the Plan before it adopted the Arbitration Provision.  Because the Plan agreed to arbitration, its disputes must be resolved through arbitration regardless of who pursues the Plan's claims. The fact that Parrott seeks to represent individuals who were part of the plan when it was amended to add the Arbitration Provision—and are still part of the Plan—underscores why the Plan's Arbitration Provision must

---

[1] An ERISA action under § 1132(a)(2) may be brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."  29 U.S.C. § 1132(a)(2).  The district court did not address whether its ruling that Parrott is not a "Participant" as defined by the Plan affects his standing to bring an ERISA claim under § 1132.

govern.    The district court thus erred in denying Appellants' motion to compel arbitration on the basis that Parrott was not a Plan participant at the time the Arbitration Provision was adopted.

Parrott also argued in the district court that the Plan's Arbitration Provision prohibited the effective vindication of his statutory rights under ERISA, and also that the Plan unlawfully weakened the standard of review for fiduciary actions.   Though the district court did not reach either argument in its decision, neither argument is a proper reason to deny arbitration.

The so-called "effective vindication doctrine" has not been adopted by this Court, and the Court should not do so now.   Even so, the Plan permits Parrott to effectively vindicate his individual claims through binding arbitration, and he is not prohibited from obtaining relief through arbitration that would impact other Plan participants, such as the removal of a fiduciary.   The effective vindication doctrine, therefore, should not prohibit arbitration here.

Finally, the Plan does not unlawfully "water down" the standard of review for fiduciary actions.   The Plan dictates that the applicable

standard of review in arbitration would be the same that would apply in federal court. The "unlawful exculpatory provision" argument against the Arbitration Provision that Parrott made below was a red herring, as there is no effort in the Plan's terms to alter the standard of review for fiduciary actions.

## STANDARD OF REVIEW

A district court's denial of a motion to compel arbitration is reviewed de novo. *Tittle v. Enron Corp.*, 463 F.3d 410, 417 (5th Cir. 2006).

## ARGUMENT

The district court erred in denying Appellants' motion to compel arbitration. Parrott brought this action pursuant to section 1132(a)(2) of the Employee Retirement Income Security Act ("ERISA").[2]

The district court held that the arbitration clause of the Plan did not apply to Parrott because it was adopted after Parrott's employment

---

[2] Section 1132(a)(2) provides that a civil action may be brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109(a), in turn, imposes liability for any fiduciary who breaches his obligations to the plan. *Id.* § 1109 (a) "Taken together, § 1109(a) creates fiduciary liability, and § 1132(a)(2) allows for its enforcement." *Smith v. Bd. of Dirs. of Triad Mfg.*, 13 F.4th 613, 618 (7th Cir. 2021) (citing 29 U.S.C. § 1109(a)).

with plan-sponsor IBC ended.  But because Parrott seeks to vindicate *the Plan's* rights through litigation, and because the Plan lawfully adopted an arbitration provision after Parrott's departure from IBC, the dispute allegedly seeking to uphold Plan's rights—as distinct from Parrott's individual rights—is subject to arbitration.  Appellants respectfully request the district court's order be reversed, and that the parties be compelled to arbitration.

## I.     The arbitration provision is valid and enforceable against Parrott.

The Plan agreed to arbitration, and any person seeking to bring claims on the Plan's behalf must therefore adjudicate those claims through arbitration.  Parrott is no exception just because he is no longer a Plan participant.  Indeed, he purports to bring this action on behalf of individuals who were part of the Plan when it was amended, and are still part of the Plan. The district court erred as a matter of law in holding otherwise.

### A.     Federal and state law strongly favor the enforcement arbitration agreements.

Appellants filed their motion to compel arbitration pursuant to and governed by the FAA, 9 U.S.C. § 1, *et seq. See Am. Express Co. v. Italian*

*Colors Rest.*, 570 U.S. 228 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Carter v. Country Wide Credit Indus.*, 362 F.3d 294 (5th Cir. 2004). Under the FAA, Congress declared a national policy favoring arbitration and withdrew the power of states to require a judicial forum for the resolution of claims if the parties had agreed to arbitrate. *Concepcion*, 563 U.S. at 346. The United States Supreme Court in *Concepcion* noted, "our cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,' and 'a liberal federal policy favoring arbitration agreements . . . .'" *Id.* at 345–46 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

This strong national policy favoring arbitration applies specifically to ERISA-related claims, like Parrott's here. *See, e.g.*, *Hendricks v. UBS Fin. Servs.*, 546 F. App'x 514, 518 (5th Cir. 2013). Indeed, the "strong policy favoring arbitration 'holds true for claims that allege a violation of a federal statute [such as ERISA], unless the FAA's mandate has been

8

overridden by a contrary congressional command.'" *Id.* (citing *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013)) (alteration original). Here, the strong policy favoring arbitration weighs in favor of reversing the district court and compelling arbitration of Parrott's claims consistent with the plain terms of the Plan's arbitration provision.

**B.    The arbitration provision is valid and applies to Parrott's claim on behalf of the Plan because the Plan consented to arbitration.**

The Arbitration Provision in the Plan was validly formed and applies to Parrott; his individual consent was not required for the Plan to agree to arbitrate fiduciary claims.  Parrott brought his suit on behalf of the Plan under ERISA, 29 U.S.C. §1132(a)(2).  ROA.9.  The Plan, as the contracting party, holds the power to consent to arbitration.  Because the Plan itself consented to arbitration, arbitration of any dispute related to the Plan's rights is required.

ERISA plans are established by a "written instrument" that specifies the legal rights and obligations that exist under the plan.  *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)

(quoting 29 U.S.C. § 1102(a)(1)); *see also Mathews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998) (finding that ERISA plans are a species of binding contract despite being in some sense imposed on those they bind). A plan's written instrument—its governing document, essentially—may be amended "for any reason at any time." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999); *see* 29 U.S.C. § 1102(b)(3) (ERISA section contemplating plan amendment). Amendments can be unilateral, *see Mathews*, 144 F.3d at 461, and even retroactive, *see Dennison v. MONY Life Ret. Income Sec. Plan for Emps.*, 710 F.3d 741, 744 (7th Cir. 2013). The resulting document is legally binding as long as it complies with ERISA and the terms of the plan itself. *Curtiss-Wright*, 514 U.S. at 84. And it is *the plan*, as an entity, that has a contract with its trustees, *not the individual plan participants such as Parrott*—so any agreement to resolve fiduciary disputes is between *the plan* and the trustees. *Berkelhammer v. ADP Totalsource Grp., Inc.*, 74 F.4th 115, 117 (3d Cir. 2023).

Here, the Plan itself consented to arbitration as a dispute resolution mechanism when IBC, acting as the Plan's sponsor, amended its written

instrument to include the Arbitration Provision; the Plan alone, and not its individual members or former members, had the power to consent and the amendment acted as the Plan's expression of consent.  As the Third Circuit recently explained, "the plan, not the participants, [is] the relevant contracting party."  *Id.* at 119.  That is so because "civil actions under [ERISA] § 502(a)(2) 'for breach of fiduciary duty [are] brought in a representative capacity on behalf of the plan as a whole' to 'protect contractually defined benefits.'"  *Id.* (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)).

Because Parrott brings his claims on behalf of the Plan, "the Plan's agreement to arbitrate is what matters, and that agreement applies to [plaintiff's] claims on the Plan's behalf."  *Id.* at 120.  In other words, "the presence or absence of the individual claimants' consent to arbitration is *irrelevant*; what counts is the contract created by the plan."  *Id.* (emphasis added).  As the Third Circuit explained recently in *Berkelhammer*, it is not Parrott's consent to arbitration that matters but rather the consent of the Plan itself.   And the Plan's consent to arbitration here is undisputed.

Contrary to the district court's holding, the timing of the arbitration amendment is also irrelevant; it does not matter that Parrott ceased participation in the Plan before it was amended to add the Arbitration Provision, or that his alleged injury arose prior to the Plan's agreement to arbitrate any fiduciary claims. The Federal Arbitration Act ("FAA") "explicitly contemplates the enforceability of agreements to arbitrate 'existing controvers[ies].'" *Harris v. Paredes*, No. 3:23-cv-50231, 2024 U.S. Dist. LEXIS 32199, at *8 (N.D. Ill. 2024) (quoting 9 U.S.C. § 2). Thus, though Parrott's alleged injury existed before the Plan was amended, the Plan still had the power to later agree to arbitration, and that is precisely what occurred.

A district court in Illinois recently applied these concepts in a case factually similar to this one. In *Harris v. Paredes*, a 2024 case, a plaintiff sued on behalf of her ERISA plan for breaches of fiduciary duty by the trustees. *Id.* at *2. The defendants moved to compel arbitration based on an arbitration provision in the ERISA plan. *Id.* The plaintiff argued that the arbitration provision did not apply because she had not individually consented to arbitration, and because the arbitration

provision was amended *after* she brough her claims. *Id.* at \*7-8. The district court disagreed with the plaintiff, and enforced the arbitration provision, explaining that the plaintiff's "consent to arbitration is irrelevant; what counts is the contract created *by the plan*." *Id.* at \*7 (quoting *Berkelhammer*, 74 F.4th at 120) (emphasis original). The *Harris* court further determined that "even though [the arbitration amendment] was not implemented until after [the plaintiff] brought" her claims, the claims still had to go to arbitration because her plan "validly agreed to arbitrate an existing dispute." *Id.* at \*8 (emphasis added).

A federal district court in Florida held the same recently, even where, like here, the putative class representative had divested from the plan prior to adoption of the arbitration provision. In *Holmes v. Baptist Health S. Fla., Inc.*, Civil Action No. 21-22986-Civ-Scola, 2022 U.S. Dist. LEXIS 10834, at \*8 (S.D. Fla. 2022), the plan sponsor unilaterally adopted an arbitration agreement, without the individual consent of the plan beneficiaries. *Id.* at \*8-9. Much like this case, in *Holmes* the putative-class-representative plaintiff was terminated from employment and removed all of her funds from the plan before the arbitration

amendment was added. *Id.* at *10. And paralleling the reasoning upon which the district court here denied Appellants' motion to compel arbitration, the *Holmes* putative-class-representative plaintiffs argued that "the arbitration agreement [could] only be binding on the Plaintiffs who were participating in the Plan at the time that the arbitration clause was added." *Id.* at *10. The *Holmes* court rejected that argument, emphasizing that "[w]hile Plaintiff Holmes never agreed to arbitrate and was not put on notice of an agreement to arbitrate while she was a participant in the Plan, the Plan agreed to arbitration, and any claims on behalf of the Plan, including those brought by Plaintiff Holmes, must be brought in arbitration." *Id.* at *10-11.

The same is true here. Here, Parrott's claims must be arbitrated because he brings them on behalf of the Plan, which agreed to—and mandates—arbitration. Parrott's individual consent to arbitration was not required; he purports to bring claims for the whole Plan, so it is the Plan's consent to arbitration that matters. And that consent to arbitration by the Plan is undisputed. It does not matter that Parrott's alleged injury occurred before the arbitration provision was added, or

that he no longer participates in the Plan; the Plan has consented to arbitrate fiduciary disputes, and so arbitration should be compelled.

### C. Plaintiff's claims are within the scope of the arbitration agreement.

As asserted in the Complaint, Plaintiff's claims fall squarely within the broad scope of the Plan's Arbitration Provision, which unambiguously includes "[a]ny claim made by or on behalf of a current or former Employee, a current or former Participant or current or former Beneficiary . . . that *arises out of, concerns or relates to this Plan* . . . including, without limitation, any claim for benefits under this Plan, . . . any claim asserting a breach of, or failure to follow, the terms of this Plan, . . . including, without limitation, a claim for breach of fiduciary duty . . . *shall be resolved exclusively by binding arbitration*." ROA.157-58. (emphasis added). Parrott has alleged a breach of fiduciary claim here. ROA.9.

Where, as here, a party seeking to compel arbitration establishes that an arbitration agreement exists and disputed claims fall within that agreement's scope, a trial court has no discretion but to compel arbitration. *Moses H. Cone*, 460 U.S. at 24–25; *Halliburton*, 80 S.W.3d at

573; *Cantella & Co. Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding).

Although the broad language of the Plan's Arbitration Provision makes clear Parrott's claims are subject to arbitration, any doubts concerning whether a dispute is covered by the scope of an arbitration agreement must be resolved in favor of arbitration. *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009). Consistent with this presumption in favor of arbitration, this Court has held that "a valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* (citations and internal quotation marks omitted). Furthermore, "[w]hen deciding whether a claim falls within the scope of an arbitration agreement, courts focus on factual allegations in the complaint rather than the legal causes of action asserted." *Id.* (citation and internal quotation marks omitted).

Here the Arbitration Provision expressly states that "a claim for breach of fiduciary duty . . . shall be resolved exclusively by binding arbitration." ROA.157-58. This language plainly encompasses the claims

in Parrott's Complaint.  Consequently, Parrott is required to arbitrate his claims against Appellants.

### D.    Either abatement or dismissal is warranted.

Because a valid agreement to arbitrate exists between Appellants and Parrott, the district court had no discretion but to compel arbitration. *Moses H. Cone*, 460 U.S. at 24–25; *Halliburton*, 80 S.W.3d at 573; *Cantella*, 924 S.W.2d at 944. This Court should reverse the district court's order denying Appellants' motion to compel, and order that arbitration is required.  Moreover, abatement of this action is proper while the arbitration takes place. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (holding that the proper course is to stay a district court proceeding while the claims are resolved through compelled arbitration).

## II.    The requirement for individual arbitration is not invalid under the "effective vindication" doctrine.

The district court denied Appellants' motion to compel arbitration based on Parrott's status as a non-participant in the Plan at the time the Arbitration Provision was added to the Plan.  ROA.286.  Parrott also opposed arbitration on the basis that it allegedly prevents effective vindication of his statutory ERISA rights, though the district court did

not reach that argument. ROA.276-87. To the extent the Court considers that basis of opposition to the motion to compel arbitration, the effective vindication doctrine does not bar enforcement of the requirement for individual, non-representative arbitration. Parrott can obtain all relief available to him under ERISA through individual arbitration, and no binding precedent says otherwise. And to the extent the individual arbitration requirement is deemed inconsistent with ERISA, the Plan contains a severability clause that allows other portions of the Arbitration Provision, including arbitration itself and prohibition of class action, to be enforced.

### A.    Plaintiff has produced no binding authority for application of the effective vindication doctrine in this Circuit, and the doctrine is inconsistent with the goals of the Federal Arbitration Act.

Neither the Supreme Court nor his Court have applied the effective vindication doctrine to bar individual non-representative arbitration of an ERISA claim. "Although the Supreme Court has repeatedly recognized the existence of the effective vindication exception, it has, to date, declined to actually apply the exception to any case before it." *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090,

1098 (10th Cir. 2023) (collecting cases).  There is no reason for this Court to adopt for the first time the effective vindication exception here.

In sharp contrast to this Court's lack of any cases applying effective vindication doctrine, this Court—and every other circuit to consider the question—*has* repeatedly held that ERISA claims are generally arbitrable.  *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996) ("Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act"); *see Smith v. Bd. of Dirs. of Triad Mfg.*, 13 F.4th 613, 615 (7th Cir. 2021) ("Joining every other circuit to consider the issue, we recognize that ERISA claims are generally arbitrable.") (collecting cases).

Indeed, the FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the <u>revocation</u> of any contract." 9 U.S.C. § 2 (emphasis added).  No <u>revocation</u> has been effected here, and the FAA does not permit other means of invalidating an arbitration agreement.[3] *See AT&T*

_____

[3] Justice Thomas explained in discussing this provision of the FAA: "Significantly, the statute does not parallel the words 'valid, irrevocable, and enforceable' by referencing the grounds as exist for the 'invalidation, revocation, or nonenforcement'

*Mobility LLC v. Concepcion*, 563 U.S. 333, 354 (2011) (Thomas, J., concurring).  Moreover, Section 4 of the FAA provides that a court *must* order arbitration in accordance with the terms of an arbitration agreement absent a successful challenge to the "making" of the arbitration agreement.  *See* 9 U.S.C. § 4. As discussed, there is no such issue here.  The judge-made, policy-based "effective vindication" exception, is not a proper basis for declining to enforce an arbitration clause under the FAA. *Concepcion,* 563 U.S. at 355 (Thomas, J., concurring) ("Contract defenses unrelated to the making of the agreement—such as public policy—could not be the basis for declining to enforce an arbitration clause.")

In light of the FAA's pro-arbitration policy, "as well as the rarity with which courts apply the effective vindication doctrine," courts have declined to invoke the effective vindication doctrine to invalidate

---

of any contract. Nor does the statute use a different word or phrase entirely that might arguably encompass validity, revocability, and enforceability. The use of only 'revocation' and the conspicuous omission of 'invalidation' and 'nonenforcement' suggest that the exception does not include all defenses applicable to any contract but rather some subset of those defenses."  *Concepcion*, 563 U.S. at 354 (Thomas, J., concurring).

arbitration agreements in ERISA cases. *See Holmes*, 2022 U.S. Dist. LEXIS 10834, at *6 (enforcing arbitration provision in ERISA case); *see also Merrow v Horizon Bank*, N.A. 2023 U.S. Dist. LEXIS 190603, at *18 (E.D. Ky. 2023); *Duke v. Luxottica*, 2023 U.S. Dist. LEXIS 176479, at *23 (E.D.N.Y. 2023); *Avecilla v. Live Nation Entm't, Inc.*, 2023 U.S. Dist. LEXIS 139169, at *12 (C.D. Cal. 2023); *Robertson v. Argent Trust Co.*, 2022 U.S. Dist. LEXIS 133578, at *29–30 (D. Ariz. 2022).

Here, Plaintiff seeks to manufacture a conflict between ERISA and the FAA that has been rejected by other courts, and this Court should likewise refuse to find any conflict where one really does not exist. Doing so would be in keeping with the "Supreme Court['s warning] that 'we must be alert to new devices and formulas' by which litigants seek to revive the old 'judicial antagonism toward arbitration.'" *Cedeno v. Sasson*, 100 F.4th 386, 409 (2d Cir. 2024) (Menashi, J., dissenting) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 509 (2018)). ERISA was passed after the FAA and does not address arbitration of ERISA claims. ERISA does not displace any part of the FAA; indeed, ERISA expressly provides "[n]othing in this subchapter shall be construed to alter, amend,

modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). Had Congress intended for ERISA to displace the FAA, it would have said so. It did not. The strong policy in favor of arbitration should prevail over Parrott's attempt to manufacture conflict between the FAA and ERISA.

### B. Even applying non-binding authority from other Circuits, the Plan's Arbitration Provision allows for effective vindication of Parrott's claims, just not class action.

Parrott is correct that some circuits have refused to enforce arbitration provisions that restrict representative plan-wide relief in ERISA cases. This is so, according to those courts, because ERISA gives a right to seek plan-wide relief in a representative capacity, and arbitration agreements cannot be used to waive that right.

But what Parrott's cases do not do—and what ERISA does not do—is mandate that any ERISA claim proceed as a class to obtain class-wide relief. Indeed, under Supreme Court precedent, § 502(a)(2) *permits* plaintiffs to obtain individual relief where the claim arises out of a defined contribution plan. *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S.

248, 256 (2008) ("although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account").   Individual relief is available such that an "individual claim is proportional to the claims and losses of fellow participants" in the Plan. *See Perez v. Bruister*, 823 F.3d 250, 257-58 (5th Cir. 2016).  There is no mandate, in ERISA or otherwise, that relief under ERISA *must* go to every plan participant.  In other words, plan participants do *not* have an obligation to seek relief on behalf of the whole plan, and the Plan here does not run afoul of any statutory obligation by narrowing Parrott's available relief to just that which he is *individually* entitled.  Parrott may recover his portion of losses to the Plan, if any.

And the Plan empowers the arbitrator to award any relief to which claimant is entitled:

> The arbitrator(s) shall have the authority to fashion any award and remedy available under the law governing the Covered Claims involved.

ROA.166.

In opposition to Appellants' motion to compel arbitration in the district court, Parrott invoked a decision in the Northern District of Texas, *Coleman v. Brozen*, in which the court refused to enforce an ERISA plan arbitration provision. But the class-action waiver here is much narrower than that in *Coleman*, which provided that a "Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant." *Coleman v. Brozen*, Civil Action No. 3:20-CV-01358-E, 2023 U.S. Dist. LEXIS 119528, at *33 (N.D. Tex. 2023). Here, the class-action waiver says that "no Arbitration Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief." ROA.167.

The *Coleman* provision prohibited the award of ERISA relief to absent plan members, while the provision at issue here prohibits an award to the *claimant* of any relief to which the individual claimant is not *individually* entitled. The *Coleman* provision ran afoul of the ERISA right to seek plan-wide relief, such as removal of a fiduciary. *Coleman*, 2023 U.S. Dist. LEXIS 119528, at *33. But the provision here does not

do that; a Claimant could be individually entitled to the removal of a fiduciary, as would be the other participants in the Plan—the Claimant is just not entitled to receive any monetary relief belonging to others under the provision at issue here.

Finally, Plaintiff's argument ignores the primacy of ERISA plan language. As the Supreme Court has held, the written terms of the plan are the linchpin of ERISA. *Varity Corp. v. Howe,* 516 U.S. 489, 497 (1996); *Heimeshoff v. Hartford Life & Acc. Ins. Co.,* 134 S.Ct. 604, 612 (2013). The Plan terms mandate individual non-representative arbitration and that mandate is enforceable.

## C.    To the extent the Arbitration Provision bars statutory relief permitted by ERISA, the Plan's severability clause severs the provisions that go too far.

To the extent the mandate for individual arbitration goes too far, the Plan contains a severability clause that the Court should employ to narrowly strike any unenforceable aspects of the Arbitration Provision:

Section 13.06          Severability of Provisions

If any provision of the Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof, and the Plan shall be construed and enforced as if such provisions had not been included.

25

ROA.151.

In *Coleman v. Brozen*, the court refused to enforce the arbitration provision in part because it specified that the class-action waiver was specifically *not* severable:

> The requirement that (x) all Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary **and is a material and non-severable term** of this Section A-2, Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"). In the event that the requirements of this subsection (the "Class Action Waiver") were to be found unenforceable or invalid by the court specified in Section A-6, then the entire Arbitration Procedure (i.e., all of this Section A-2) shall be rendered null and void in all respects.

*Coleman*, Civil Action No. 3:20-CV-01358-E, 2023 U.S. Dist. LEXIS 119528, at *9 (emphasis added).

The Arbitration Provision in this case does not contain any such severability limitation, and the severability clause should be invoked to give the Arbitration Provision the fullest intended effect within the confines of the law, if necessary, including enforcement of the arbitration

requirement and enforcement of the prohibition of class actions.[4]

## III. The Arbitration Provision is not an unlawful exculpatory provision.

Parrott also argued in the district court that the Plan unlawfully diminished the standard by which fiduciaries would be evaluated. ROA.230. Again, the district court did not reach this argument in arriving at its denial of Appellants' motion to compel arbitration. *Parrott*, No. 5:24-cv-1263-DAE, 2025 U.S. Dist. LEXIS 73329, at *10. Still, Parrott's argument that the Arbitration Provision is an unlawful exculpatory provision was a red herring. The Arbitration Provision does not impose a lower standard of review than the law imposes on fiduciaries; in fact it specifies that "[i]n any arbitration of a Covered Claim, . . . the arbitrator(s) will apply the same standards of review to the Covered Claim as would apply if the Covered Claim had been filed in the United States District Court for the Western District of Texas."

---

[4] This necessarily means that, if Plaintiff is permitted to bring this action on behalf of the entire Plan under ERISA, §1132(a)(2), other participants would be unable to express their positions on the issues, opt out, object to any relief awarded, if any, or otherwise avail themselves of the protections of Rule 23. It also presents the possibility of conflicting judgments and results that Rule 23 was designed to prevent.

ROA.159.  It further provides that "*to the extent* such Plan fiduciary is granted discretionary authority by the Plan or Trust Agreement with respect to such action, inaction, or determination" *then* "all actions and inactions of any Plan fiduciary . . . will be reviewed under an abuse of discretion standard."  *Id.* (emphasis added).  There is no wholesale reduction in fiduciary responsibilities, as Parrott seemed to argue.

Plus, the Supreme Court has held that decisions regarding plan benefits can be reserved to the discretion of the decisionmaker and, if they are reserved to discretion, then deferential review applies. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  That is exactly the standard enacted by the Plan documents, here.  Even so, to the extent the standard of review contained in the Arbitration Provision is deemed unlawful (it should not be), Defendants again invoke the Plan's severability provision, and ask that any offending portions of the language be severed, to give the remainder of the Arbitration Provision full effect.

## CONCLUSION

Appellants International Bancshares Corporation, International Bank of Commerce, and the International Bancshares Corporation Profit Sharing Committee respectfully request that this Court reverse the order of the district court denying Appellants' motion to compel arbitration, and order that arbitration be compelled.  Appellants request any further relief to which they may justly be entitled.

Respectfully submitted,

*/s/ Christopher D. Kratovil*
**Donna McElroy**
State Bar No. 13582050
dmcelroy@dykema.com
**Brooke M. Bohlen**
State Bar No. 24121915
bbohlen@dykema.com
**DYKEMA GOSSETT PLLC**
112 E. Pecan, Suite 1800
San Antonio, TX  78205
Telephone:  (210) 554-5500
Fax:  (210) 226-8395

**Christopher D. Kratovil**
Texas Bar No. 24027427
ckratovil@dykema.com
**DYKEMA GOSSETT, PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401

**ATTORNEYS FOR APPELLANTS**

# CERTIFICATE OF SERVICE

This is to certify that this brief was served this day on all parties

who receive notification through the Court's electronic filing systems.

**Jennifer K. Lee**
**Carl F. Engstrom**
ENGSTROM LEE LLC
323 N. Washington Ave., Suite 200
Minneapolis, Minnesota, 55401

**Marc A. Zito**
JONES GRANGER
10000 Memorial Drive, Suite 888
Post Office Box 4340
Houston, Texas 77210

DATED: July 21, 2025

*/s/ Christopher D. Kratovil*
**Christopher D. Kratovil**
Counsel for Appellants

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this brief contains 5,336 words.

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

DATED: July 21, 2025

/s/ Christopher D. Kratovil
**Christopher D. Kratovil**
Counsel for Appellee